# McReynolds's Appeal.
# Maltby's Appeal.

1. Maltby assigned to Kase one-fifth interest in a railroad contract payable in stock and bonds, Kase to pay one-fifth of the cash capital ($150,000), " as may be required by Maltby," who was authorized to sell stock and bonds, if necessary to prosecute the work, the profits to be divided amongst the parties in proportion to the cash contributed. Kase being called on by Maltby refused to pay more than one-fifteenth, alleging that no more was required than Maltby had realized from stock and bonds, Maltby completed the contract. *Held,* that "required" meant "called for" and that Kase was entitled to but one-fifteenth of the profits.

2. It was agreed that Maltby should "have the same control over the execution of the work, sale of the stock," &c., as if the contract had " never been executed." *Held,* that Kase could not question Maltby's exercise of authority except on the ground of want of good faith.

3. Maltby was partner in a firm with whom he contracted for iron for the road; prices having greatly increased, he by an arrangement "made in entire good faith" agreed to give an increased price. *Held,* that he should be allowed for the advance in settling with Kase.

May 25th 1870. Before, THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.

Appeal from the decree of the Court of Common Pleas of *Lancaster county :* Nos. 86 and 95, to May Term 1870.

On the 28th of February 1862 Caleb S. Maltby entered into a contract with the Reading and Columbia Railroad Company for the construction of their road from Columbia to Sinking Springs, on the Lebanon Valley Railroad, for which the company were to pay to Maltby $400,000 in the stock of the company, and $600,000 of their 7 per cent. mortgage-bonds, to be paid *pro ratâ,* as the work progressed.

[McReynolds's Appeal.]

On the 2d of June 1862 Maltby entered into a contract with Simon P. Kase, agent, reciting Maltby's contract with the company, by which Maltby assigned to Kase an interest in the contract to the extent of one-fifth, he to furnish " one-fifth of the cash capital of $150,000 required for the execution of the said contract according to the terms thereof, or in that proportion of such cash capital as may be actually required and used, not exceeding $150,000," Kase having " already paid one-third, that is to say, $10,000," and agreeing to pay the balance of the cash " in instalments not exceeding 10 per cent. thereof monthly, as the same may be required by the said Caleb S. Maltby, or his legal representatives ; the said monthly instalments shall be due and payable at the same times as those from Robert Crane under contract between said Caleb S. Maltby and him, dated April 10th 1862."

The agreement further provided :—

" And whereas, in the execution of the work under the said contract it will become necessary to use the stock and mortgage-bonds aforesaid, it is further agreed that the said Caleb S. Maltby be and is hereby authorized to negotiate, sell and transfer the same from time to time whenever in his judgment it is expedient so to do, and in such amounts and at such prices as he may deem expedient. And it is further agreed that the said Caleb S. Maltby shall have exclusive control of the work while in progress, and that he may make such sub-contracts and employ such parties as he may deem proper ;—it being the intention of the said party of the second part that the said Maltby shall have the same control over the execution of the work, and stock and bonds so far as the prosecution of the said work may require their sale or other disposition, as he would have had, had these presents never been executed. And it is further agreed upon the completion of the work under said contract, according to its tenor, the stock and bonds, or either that may remain, shall be divided between the said Caleb S. Maltby and the parties who have furnished cash for the prosecution of said work, in proportion to their respective contributions to the cash required and used, it being the intention of the parties hereto, that if the said party of the second part shall not have paid up his instalments as required, his interest in said bonds and stock, in place of being one-fifth shall only be in proportion of the sums actually paid by him to the cash capital required and used aforesaid. And it is further agreed that the said Caleb S. Maltby shall keep regular books showing the expenditures for the said work, which books shall be in charge of the said M. H. Angell, where they shall be at all times open to the inspection of the said party of the second part. And that the accounts preparatory to a division of the stock and bonds as aforesaid shall be audited by the said M. H. Angell,

[McReynolds's Appeal.]

whose decision shall be final and conclusive. And it is further agreed that nothing herein contained shall be taken to give to the party of the second part any claim whatever against the said company, whether it has notice of these presents or not, but that the said Maltby shall be authorized to make all settlements, current or final, with the said company, as though these presents had never been executed."

On the 4th of June 1864, the McReynolds filed a bill against Maltby setting out the foregoing contracts, and averring that the contract of June 2d 1862 was made with them through their agent, Kase, and that the defendant completed the contract and received from the company the whole compensation of $400,000 in stock and $600,000 in mortgage-bonds; that the defendant, as the work progressed, sold a large amount of the bonds and received cash for them which, with the sums paid by the plaintiff and others interested in the contract at its date amounting to $50,000, was sufficient to complete the contract with the company without any further advance of cash capital, and that no more was required. They further complained that about the time of their agreement with the defendant, he contracted with the firm of Maltby & Case in which he is a partner for the purchase of iron for the road at $45 per ton, and that he afterwards, without the consent of the plaintiffs, paid Maltby & Case $64 per ton for a large portion of the iron, and wrongfully charged the plaintiffs with the advance. They averred that large profits were made on the contract of which the plaintiffs were entitled to receive one full fifth part; that the defendant held a large amount of the stock and bonds of the company of which the plaintiffs were entitled to one-fifth, but that the defendant refused to pay them the one-fifth of the profits of the contract or transfer to them one-fifth of the stock and bonds, alleging that the plaintiffs have forfeited their right to all except one-fifteenth of each.

The prayer was for an account; payment of the balance due on the profits and the transfer of one-fifth of the stock and bonds, and for further relief.

Maltby by his answer admitted entering into the contract with S. P. Kase, but denied that it was entered into with the complainants through Kase, and never heard of complainants' connection with it till he saw the bill; he denied that the sums realized from the bonds and the $50,000 paid by Kase, plaintiffs and other parties' interest were sufficient to complete the work, and averred the $50,000 were wholly insufficient, and a larger cash capital had to be furnished before the contract could be completed; that the cash capital actually furnished and used was $150,000, of which Kase supplied $10,000, Robert Crane $15,000, M. M. Strickler $10,000, who were each interested to the extent of one-fifth, and the defendant $115,000 over and above the amount

realized from the sale of stock and bonds; that in consequence of $50,000 being insufficient to complete the contract he called on the parties interested for further instalments; that all the parties had paid except Kase, who refused and had not then paid; that still further instalments were called in when Crane paid; but Strickler being unable to pay agreed to reduce his interest accordingly, but Kase refused to pay. The answer further averred that the defendant having entire control over the work as if his contract with Kase had not been executed, contracted verbally with the firm of Maltby & Case of which he was a partner, for $45 per ton under the understanding of the firm that the contract would be completed within the year 1862 according to the contract with the railroad company; that the contract for the iron was not to be indefinite as to time; that circumstances having prevented the completion of the contract within 1862, the company extended the time, and it became necessary to make a new contract. Accordingly one was made subject to all contingencies at $64 per ton. He admitted that profits had been made from the contract which, with all other matters connected with the contract, had been audited by Angell, and averred that the defendant was ready to hand over to Kase whatever appeared to be due them on their contract which was one-fifteenth and no more, and prayed that the account as stated by Angell and annexed to the answer might be declared to be binding. He averred that he had fully settled with Strickler, he accepting one-fifteenth in consequence of his inability to pay his instalments, and with Crane. He averred that the plaintiffs being strangers to the contract had no right to an account as prayed for, and if they had, they are bound by the account stated by Angell.

On the 18th of May 1864, Angell as auditor reported an account, subject to certain exceptions specified, to Maltby, Crane, Strickler and Kase. He reported that "the whole amount of $150,000, cash capital (provided for in the several contracts between C. S. Maltby and those admitted by him to a participation in his contract with said company), had been at different times called for and paid in as follows:—

| | |
|---|---|
| Robert Crane, . . . . . | $15,000 |
| M. M. Strickler, . . . . . | 10,000 |
| C. S. Maltby, . . . . . | 115,000 |
| S. P. Kase, agent, . . . . | 10,000 " |

After showing the amount of profits and the assets consisting of cash, railroad stock and bonds to be in the aggregate $578,462.09, he divided them in these proportions:—

| | | |
|---|---|---|
| Robert Crane, | 15-150ths | $57,846.27 |
| M. M. Strickler, | 10-150ths | 38,564.14 |
| C. S. Maltby, | 115-150ths | 443,487.60 |
| S. P. Kase, agent, | 10-150ths | 38,564.14 |

On the 20th of February 1865, he made another report showing for further "distribution, $10,065.01 which I divide on the same basis as that made on the 18th day of May, A. D. 1864, above referred to, viz. :—

| | | | |
|---|---|---|---|
| C. S. Maltby, | 115-150ths | . | . $7716.51 |
| Robert Crane, | 15-150ths | . | . 1006.50 |
| M. M. Strickler, | 10-150ths | . | . 671.00 |
| S. P. Kase, agent, | 10-150ths | . | . 671.00 " |

A replication was filed, and N. Lightner, Esq., was appointed examiner. On the coming in of his report he was appointed master.

He found amongst other things as follows: On the 25th of September 1862 Angell, on behalf of Maltby, gave Kase notice that "five monthly payments of 10 per cent. each, now past due, * * * must be paid on or before the 1st day of November next," and requested Kase to pay $10,000 before that day.

Kase replied under date of October 29th 1862 :—

" Mr. C. S. Maltby.

" Dear Sir : I have received notice to pay a further sum on our contract with the Reading and Columbia Railroad Company ; but after carefully examining our books and accounts, I find there is money enough on hand to complete the contract, and therefore none can be required from your co-associates. If I am convinced that I am in error, I will pay promptly and most cheerfully."

Maltby replied to Kase, November 6th 1862 :— * * *

" Your failure to make the payment of $10,000 on the 1st instant, on construction account of the Reading and Columbia Railroad, as required by me from you, has subjected me to much inconvenience, and compelled me to raise an additional amount of $10,000 to supply the deficiency. Your interest, therefore, at this time, in my contract with the Reading and Columbia Railroad Company, as shown by our stock account and agreement, is one-tenth part thereof."

On the 8th December 1863 Maltby wrote to Kase :—

" You are hereby required to pay to M. H. Angell, &c., on the 19th of December 1863, $2500, it being one-tenth of the sum of $25,000 needed at that time, and being your proportion of said sum."

Kase replied, December 18th 1863 :— * * *

" In your notice of December 1863 you assume that my interest is but one-tenth, which assumption is not in accordance with the facts, but is contrary to our written contract dated the 2d of June 1862. I am prepared to pay the assessment in proportion to the one-fifth in your contract with the company, but decline payment upon the ground of owning but one-tenth interest in your contract as aforesaid, and shall be happy so to pay on being satisfied that the money is actually required to be used in the completing of

[McReynolds's Appeal.]

your contract with the Reading and Columbia Railroad Company, as dated the 28th day of February 1862. I have examined the books and accounts of the expenditures and receipts of money belonging to us jointly, and which has been disbursed by you, and have failed to ascertain that you need any additional money to complete our contract with the Reading and Columbia Railroad Company."

On the 12th of January 1864 Maltby wrote to Kase:—

" It becomes necessary to call in the final assessment from the co-contractors to build the Reading and Columbia Railroad, amounting to $25,000, your interest in said contract being 8 per centum of the whole amount; the amount due from you is $2000, which you are required to pay to M. H. Angell, at his office in Columbia, Pennsylvania, on the 19th day of January 1864.'

Kase replied, January 15th 1864:— * * *

" You assuming that amount (8 per cent.) to be the share of interest I represent, proportionate to the raising of $25,000, which assumption is not the fact, as you have assigned one-fifth of your contract to me as agent, I decline payment upon any such assumption; you having assumed that my interest is one-eighth per centum of the whole amount as declared in your notice of January 12th 1864. I am ready to pay my proportionate share of money in accordance with said contract with you, as dated the 2d of June 1862, if assessed in accordance with the facts as exhibited by our agreement. On examination of our books, I am well satisfied that, if a strict application of our funds in your hands to the payment for the work and material necessary to finish our contract with the Reading and Columbia Railroad had been strictly applied for that purpose, we have more than sufficient to complete our contract." * * *

The master found that Maltby had paid the assessments which Kase failed to pay, and also those of Strickler when he failed to pay, and Crane had paid his assessments. He found also the reports of Angell, the auditor, as given above.

On the 10th of April 1862 a verbal contract was made between Maltby & Case and C. S. Maltby for all the iron necessary to complete the railroad at $45 per ton; the rails to be delivered as needed, and to be paid for monthly. The firm of Maltby & Case consisted of Caleb S. Maltby, the defendant, and William G. Case. Case was president of the railroad company. Crane was the superintendant for Maltby in building the road.

On the 4th of March 1863 Maltby & Case gave the following notice:—

" Robert Crane, Esq., Agent.

" Dear Sir : In consequence of the depreciation of the currency of the country, we are compelled to ask an advance in the price of the railroad iron we are furnishing for the Reading and Colum-

bia Railroad, and will not furnish more than enough to lay the track to Litiz at present prices."

Soon after this, Mr. Maltby visited Columbia, and a consultation was held on the subject-matter of the above notice; M. M. Strickler, Caleb S. Maltby, William G. Case, and Robert Crane being present. Simon P. Kase was not present, nor does it appear that he was notified or invited to be present.

The interview resulted in a proposition being made by William G. Case, on behalf of the firm of Maltby & Case, and accepted by the other parties in interest, that the firm of Maltby & Case should "furnish the balance of the iron needed to finish the road at $64 per ton, cash, without regard to further depreciation of the currency, being $19 per ton more than the price fixed by the first contract."

At this date the market price of railroad iron was from $70 to $72 per ton. * * *

Kase being informed of this arrangement, on the 12th of March 1863 addressed to Maltby this note:—

"You are hereby notified that you must insist on a faithful observance of the terms of purchase of railroad iron from Maltby & Case, for the Reading and Columbia Railroad, to wit, at $45 per gross ton for rails, and that I will in no event allow you on settlement a greater price than that named."

The arrangement for increase of price of the iron was consummated. There were about 1843 tons, all that was needed to January 1st 1863, delivered at $45, and about 1872 tons at $65 per ton.

The master reported that the decision of Angell, the auditor, was not conclusive; that his "decision," as mentioned in the contract, meant a "finding or result of Mr. Angell's labors as an accountant, and not the exercise of any supposed judicial authority given him. It was his duty to investigate the books of the contractor, * * * but when he proceeded to make a division of these assets, declaring the proportionate shares of the respective parties therein, he went beyond his province."

The master further found "that the interest of S. P. Kase in the assets upon the completion of the contract was not one-fifth, but one-fifteenth only."

As to the question whether Maltby should be allowed for the advanced price paid for the iron, the master reported:—

"The road was to be finished by January 1st 1863; rails had nominally risen from $45 to $72. The firm of Maltby & Case refused to deliver after that date at $45, 'in consequence of the depreciated state of the currency.' Maltby, with the concurrence of Crane and Strickler, made a new bargain with the firm for the balance of the iron that might be needed at $64, 'without regard to further depreciation of the currency.' S. P. Kase did not

[McReynolds's Appeal.]

assent, but protested against this change of price. The defendant, notwithstanding, allowed to Maltby & Case $64 per ton for all the rails delivered under the second bargain; and the plaintiffs now in their bill ask that the defendant shall account to them for the one-fifth of the excess price paid as above stated. The defendant answers that he is not so liable, because the contract was 'not indefinite in point of time,' and alleges that under his agreement with Kase 'such increased price was properly chargeable in account between himself and the parties interested.' Without going into the question how far time entered into the first contract as an element affecting its operation, is not the action of the defendant in this matter justified on equitable principles, in view of the full authority possessed by him in the premises? Strip the transaction of the somewhat embarrassing fact that the contractor was at the same time buyer and in part seller, and suppose him to have had no interest in the rolling-mill. When the firm refused to deliver longer at $45—on a plea certainly not altogether without force—the defendant had but one alternative, either to stop the work for want of rails, or bargain anew on the best terms obtainable. In this latter course he could see the promotion not only of his own interest in the work under progress, but as well the true interests of all concerned with him, including his refractory associate himself. Does the fact that the contractor was at the same time buyer and a member of the selling firm, affect the question? Only so far as it may require the clearer exhibition of good faith on his part. But in this, as in every other act of the defendant, no charge of bad faith is or can be imputed.

" The master views S. P. Kase in this undertaking as a silent partner, agreeing to contribute to the capital employed, surrendering to the contractor the entire and exclusive control of the enterprise, with no right in himself to direct, counsel or interfere; but only entitled in the end to his fair proportion of the profits." * * *

The master reported that the plaintiffs were entitled to one-fifteenth of the assets in the hands of the defendant, and that he "must pay over and deliver to the plaintiffs:

| | | | |
|---|---|---|---|
| " One-fifteenth of cash and cash items, . . . . | $12,195.38 | 813.03 |
| " | first mortgage-bonds on hand, . | 29,500.00 | 1966.67 |
| " | " " due, . . . | 120,000.00 | 8000.00 |
| " | R. & C. R. R. stock, . . . . . | 386,000.00 | 25,733.33 |
| " | cash due as of April 1st 1864, . | 30,766.71 | 2051.11 |
| " | cash as of February 1865 . . . | 10,065.01 | 671.00 |

With interest on this last sum from February 20th 1865.
With interest on the other cash sums of $813.03, and $2051.11 from April 1st 1864.
With all coupons on bonds maturing after April 1st 1864."

The plaintiffs filed twelve exceptions to the master's report, amongst which were the following :—

[McReynolds's Appeal.]

" 1. The master errs in deciding that plaintiffs' interest in the contract is but one-fifteenth, instead of one-fifth.

" 8. The master errs in supporting defendant's charge of railroad iron at $64, instead of $45 per ton, as contracted for.

" 9. The master should have charged defendant with the difference between $45 and $64 per ton on all the railroad iron charged by defendant at the latter rate."

The court overruled the 1st exception, and sustained the 8th and 9th, and directed that the basis of the settlement should be at $45 per ton for all the iron, and that on that account there should be $2345.58 added to the amount awarded by the master to the plaintiffs and decreed accordingly.

Both plaintiffs and defendant appealed to the Supreme Court.

The plaintiffs assigned for error :—

1. Overruling their 1st exception to the master's report.

2. The court should have awarded the plaintiffs three times the amount awarded in the decree.

The defendant assigned for error that the court erred in sustaining the 8th and 9th exceptions to the master's report.

*I. E. Hiester, J. W. Maynard* and *T. E. Franklin* (with whom was *S. P. Wolverton*), for McReynolds.

*H. M. North* and *J. H. B. Latrobe,* for Maltby.

The opinion of the court was delivered, July 7th 1870, by

SHARSWOOD, J.—These are appeals by both parties from the final decree of the Court of Common Pleas of Lancaster county upon bill, answer, proofs and the report of a master in equity.

The decision of the master as to the effect of the settlement by M. N. Angell appears to have been acquiesced in by Mr. Maltby. The point has not been made and discussed here, and we give no opinion upon it. I mention this to preclude any inference which might be drawn from its being passed *sub silentio.* For myself, I am unable to see that, when it is expressly agreed that the accounts of a copartnership or joint undertaking shall be audited by a person named, " whose decision shall be final and conclusive," the reference does not include every question of law and fact necessary to the ascertainment of the balance—which is the evident object of the audit. Let that pass, however.

The first, and most important, question is as to the construction of the contract of June 2d 1862. That instrument is drawn with the care and skill of a lawyer, and leaves scarce a loop to hang a doubt upon. The consideration of the agreement by Maltby to admit Kase to a participation in his contract with the Reading and Columbia Railroad Company was his furnishing one-fifth of the cash capital of $150,000 required for the execution of the said contract, or in that proportion of such cash capital as may be actually required and used not exceeding $150,000, and Kase agreed

[McReynolds's Appeal.]

"to pay up the balance of the cash to be paid as aforesaid in instalments not exceeding 10 per cent. thereof monthly, as the same may be required by the said Caleb S. Maltby or his legal representatives." It is very clear, that by the word "required," as here used, is meant "called for," and this is confirmed when we turn to another clause of the contract, in which it was agreed that Maltby was to "have exclusive control of the work while in progress;" was to negotiate, sell and transfer the stock and bonds which he might receive from the railroad company, "whenever, in his judgment, it is expedient so to do, and in such amounts, and at such prices, as he may deem expedient." "It being the intention of the said party of the second part that the said Maltby shall have the same control over the execution of the work, and stock and bonds, so far as the prosecution of the said work may require, their sale or other disposition, as he would have had had these presents never been executed." The substance of the agreement evidently was that, so far as his interest was concerned, Kase constituted Maltby his attorney in fact, with the amplest powers and discretion to act in the matter as he should deem best. Whether he might have carried through the contract with less cash capital; whether it would have been better to have disposed of stock and bonds; whether it was right to assent to the sale by the company of a part of the bonds;—were all matters within the scope of the discretionary powers which Kase had agreed to intrust to Maltby. He cannot now question their exercise, except on the ground of a want of good faith, which is not and cannot be pretended. The fact that Maltby himself paid up in cash, as called in, to the cashier appointed by the parties, not only his proportion of the capital required, but that portion which Kase refused to pay, would of itself be conclusive of that question. Nor is there anything in the suggestion that the call of September 25th 1862 for five monthly instalments was premature and unauthorized. By the terms of the contract, the monthly instalments were to be due and payable at the same times as those from Robert Crane, under contract between said Caleb S. Maltby and him, dated April 10th 1862. It is evident that on the 25th of September 1862 there were then past due five instalments, dating from April 10th. Nor can it be supposed that the intention of the parties was that the money could be called for only in separate monthly instalments. The nature of the works precludes such an idea, and there is nothing in the language of the instruments which demands it. "In instalments not exceeding 10 per cent. thereof monthly, as the same may be required." The rate was fixed to be ten per cent. monthly, but the instalments were to be as the same might be called for by Maltby. These considerations dispose of the appeal of the complainants, which is accordingly dismissed.

[McReynolds's Appeal.]

The remaining question is raised by the appeal of Mr. Maltby. He was a partner of W. G. Case in a firm of Maltby & Case, iron-masters, who had made a verbal contract to supply all the iron necessary to fulfil the contract with the Reading and Columbia Railroad Company at $45 per ton. They did so during that year in which, by its terms, the road was to be completed. Mr. Maltby procured an extension of time, and then his partner, Mr. Case, refused to go on supplying the iron on the original terms, the depreciation of the currency having caused an advance in the meantime of the price of iron to $70 or $72 a ton, alleging that he was bound only for the year. Mr. Maltby consulted the other parties interested in the work, and with their approbation, except Mr. Kase, a new contract was made for the supply of all the iron which might be needed until the road was finished at $64 a ton, which would be about equal in gold to the original sum stipulated. The master below reported that this new arrangement was made in entire good faith on the part of Mr. Maltby. The learned court below admit that if it had been made with a firm in which Mr. Maltby was not interested it would have been unimpeachable. But they thought that, inasmuch as he was a member of the firm, it could not be sustained. We conceive, however, that the master was perfectly right in the view which he took of the question. "Does the fact that the contractor was at the same time buyer and a member of the selling firm, affect the question? Only so far as it may require the clearer exhibition of good faith on his part. But in this, as in every other act of the defendant, no charge of bad faith is or can be imputed." It is evident that Maltby personally made nothing by this new arrangement. His interest in the contract greatly preponderated over his interest in the firm, and we are now, as in the other questions in the cause, not to overlook the fact that Kase had agreed that Maltby was to make such sub-contracts and employ such parties as he might deem proper, and to have the same control over the execution of the work as if he had been the only party interested. Under such ample powers, the exercise of his discretion could only be questioned by his associates in the enterprise on the ground of bad faith. We think, therefore, that the court below erred in sustaining the 8th and 9th exceptions of the complainants to the master's report, and in decreeing that Maltby should have credit for the iron furnished subsequent to the new contract only at the rate of $45 per ton.

Appeal of the complainants, John McReynolds and Hugh W. McReynolds, dismissed with costs.

Appeal of Caleb S. Maltby sustained, and decree reversed, and ordered that the records be remitted to the court below, that a final decree may then be entered in conformity with this opinion, the costs of this appeal to be allowed as a credit in the account with the appellee.